UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CLAUDIA ZAMORA, Individually, and as Mother and
Natural Guardian of "JANE DOE," infant,

                      Plaintiffs,

          - against -

NORTH SALEM CENTRAL SCHOOL DISTRICT,
DEBRA JACKSON, Individually and as Superintendent,
ROBERTA REINER, Individually and as Principal of
Pequenakonck Elementary School, and
ROBERT GORDON,

                      Defendants.
-------------------------------------------------------------------- x

04 Civ. 8120 (CLB)

***Memorandum and Order***

Brieant, J.

      Before the Court in this action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., is a motion for summary judgment (Doc. No. 23) filed October 31, 2005, by Defendants North Salem Central School District, Debra Jackson and Debra Reiner (collectively the "District Defendants"). Oral argument on the motion was heard on February 3, 2006. Defendant Robert Gordon is the former teacher of the infant Plaintiff and appears *pro se* in this litigation. On March 8, 2005, the District Defendants filed a cross-claim against Defendant Robert Gordon for indemnification and/or contribution. Plaintiff Claudia Zamora is the mother and natural guardian of the infant Plaintiff, and maintains a derivative claim in this action.

*Background*

      Unless otherwise noted, the following facts are undisputed or assumed true for purposes

of this motion only. The infant Plaintiff claims that during her fifth grade year (2003-2004), Defendant Gordon repeatedly made improper sexual advances to her by rubbing her back and touching her under her shirt, and that on February 26, 2004, Defendant Gordon told her to stay in class to finish her work while the rest of the class went to physical education. He rubbed her back under her clothing and then told her to go to the back of the classroom where, out of view from the classroom door, he unzipped her sweater down to her belly button, lifted her shirt with one hand and put the other hand on her left breast. Plaintiff pushed his hand away, sat down, and then ran to the bathroom, crying, and while there, she told three other students what happened.

The girls found a teacher's aide, Debbie Downey, and the infant Plaintiff told her what had happened. Ms. Downey reported the incident to a school social worker, Gail Mailsel, who took the Plaintiff to Defendant Principal Reiner's office. The Assistant Principal, Barbara Lavrakos interviewed the child and reported the incident to Defendant Superintendent Jackson, Principal Reiner, Assistant Superintendent Victoria Kniewel, and to the School's General Counsel Attorney Kehl. The State Police were called and responded to the school that afternoon. After the State Police interviewed the child and Defendant Gordon, they arrested Defendant Gordon.

It is undisputed that prior to the assault on February 26, 2004, these Plaintiffs did not report Defendant Gordon's misconduct toward the infant Plaintiff. Plaintiffs argue, however, that similar allegations of inappropriate conduct were brought to the attention of the District as early as 1989, and on other occasions since then, that Defendant Gordon's reputation for such

2

misconduct was well-known, and that the District failed to take any action to stop it until February 26, 2004.

Evidence of record shows that in 1989, Ms. H then an eleven year old student, was similarly abused by Gordon. Ms. H, an Affiant in this case, avers that in March of 1989, she reported Gordon's inappropriate conduct to a teacher's aid. On March 6, 1989, Ms. H and her parents met with the District's former Principal, Cheryl Cassano, and told Principal Cassano that Defendant Gordon had touched her inappropriately in her chest area on numerous occasions, including the last occurrence on March 3, 1989. Defendant Gordon was present for the meeting, and according to Ms. H's affidavit, he apologized to Ms. H. Principal Cassano then sent the child back to Mr. Gordon's classroom, which Ms. H later left, due to her obvious discomfort. She was then assigned to a new classroom. Ms. Cassano informed then-Superintendent Mr. McKeever of the allegations. The school officials entered a "Memorandum of Record" into Defendant Gordon's personnel file. In April 1989, Ms. H's parents wrote a letter to Principal Cassano expressing their dissatisfaction with the School's handling of the situation.

In the Spring of 1992, a letter was sent to the School Psychologist by another Affiant in this case, Ms. McG, a former student, who was in graduate school at the time that she wrote the letter. In her letter, Ms. McG advised then School Psychologist, Chris Latner, that in 1981, when she was thirteen and in the eighth grade, Defendant Gordon had fondled her breasts. On August 7, 1992, then Superintendent Charles Wilson called and interviewed Ms. McG. During the phone call, she informed Wilson that people referred to Dr. Gordon as "the Octopus."

3

Then Superintendent Wilson also called Ms. H. to confirm her allegations. He found the allegations by both Ms. H and McG to be credible. In February 1993, District Counsel, Mr. Kehl, referred the H and McG complaints to the New York State Education Department. The two Affiants were then contacted by Mr. Barton Zabin, an investigator from the New York State Education Department. In July 1993, the Education Department decided that it would not commence a proceeding to revoke Defendant Gordon's license and that the matter could "best be handled at the local level." *See Harriton Aff., Ex. GG*. At that time, the District was advised that if Defendant Gordon's alleged acts were criminal in nature, any action to terminate his employment would not be time-barred.

On August 6, 1993, Superintendent Wilson wrote a letter memorandum to Defendant Gordon, and stated:

> [T]he New York State Education Department has advised us that it has determined that it will not undertake a Part 83 license revocation proceeding at this time with respect to the allegations by two students that there was inappropriate physical contact between you and them in 1981 and 1989. The School District intends, in reliance on the State Education Department's decision, to take no further action with respect to this matter.

*Harriton Aff., Ex. HH*. Dr. Wilson also stated in the memorandum that the Education Department "invited [the District] to let [Gordon] know that it was 'prepared to move forward to a revocation proceeding if the alleged activities are repeated.'" *Id.*

In 2003, a fifth grade student reported to Defendant Principal Reiner that she had observed Defendant Gordon touching another fifth grade student, Ms. J.A., in a way that made her feel uncomfortable. The student said that Defendant Gordon placed his hand on Ms. J.A.'s

4

back. Plaintiff contends that the student told her that Gordon was playing with J.A.'s bra strap. Defendant Reiner spoke to J.A., and to J.A.'s mother, both of whom denied that there had been any inappropriate contact. Defendant Reiner spoke to Defendant Gordon, who denied that any inappropriate contact occurred. The mother of J.A. avers that her daughter said Gordon did not touch her inappropriately and that she in turn told Principal Reiner that there was no inappropriate touching.

After his arrest on February 26, 2004, Defendant Gordon resigned on March 3, 2004, effective April 1, 2004, before the District moved forward with disciplinary charges. *See Harriton Aff., Ex. SS.* On November 17, 2004, Defendant Gordon pled guilty in Westchester County Supreme Court to first degree sexual assault (first degree due to age 10 of victim child). He was sentenced to ten years probation.

Plaintiffs assert eight separate claims, alleging deprivations of due process, unspecified civil rights violations, negligence, gross negligence, sexual harassment, and emotional distress. There is also a derivative claim for loss of services on behalf of infant Plaintiff's mother, Claudia Zamora. Plaintiffs allege that the infant Plaintiff was deprived without due process of law of the constitutional right to receive an education; that the Defendants failed to provide her with a safe and harassment-free learning environment, and failed to adopt or implement policies or procedures sufficient to screen personnel and exercise reasonable care to protect Plaintiff from inappropriate behavior; that Defendants caused the infant Plaintiff severe emotional distress, mental anguish, pain, anxiety and nervousness; that Defendants were deliberately indifferent and

5

grossly negligent; and derivatively that Plaintiff Mother has been deprived of the companionship and comfort of the infant Plaintiff.

District Defendants move for summary judgment, on the several bases addressed *infra*. Plaintiffs oppose the motion, arguing that genuine issues of material fact exist and that the District Defendants, with knowledge of his propensities, enabled Defendant Gordon to keep abusing his power as a tenured teacher, as an officer of the Teacher's union, and as President of the Teacher's Association, because they were unwilling to act.

*Discussion*

Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

*Title IX Sexual Harassment Claims*

The District Defendants argue that the Title IX claims against the individual District Defendants should be dismissed because the individuals are not "recipients" of federal funds under Title IX. Title IX provides, with certain exceptions that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be

6

subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 638 (U.S. 1999). The Court agrees that Plaintiffs may state a claim under Title IX only against the District itself, as an institutional recipient of federal funds. *See e.g., Manfredi v. Mount Vernon Board of Education,* 94 F. Supp. 2d 447, 455 (S.D.N.Y. 2000)(CM). Accordingly, to the extent that the Complaint states a claim under Title IX against the individual District Defendants Jackson and Reiner, such claims are dismissed as against these two Defendants.

The District also argues that it did not have actual notice of Defendant Gordon's conduct prior to the sexual assault of February 26, 2004, and that upon discovery of the conduct, the District officials immediately responded by, among other things, reporting the allegations to the State Police and calling in the victim's mother. It argues that the District's conduct was therefore not indifferent to the infant Plaintiff's allegations of wrongful conduct. Plaintiffs respond that the School District is liable under Title IX, based upon its prior knowledge of and deliberate indifference to what Plaintiffs call Defendant Gordon's "well known abuse of specific female students."

The United States Supreme Court has held that "[u]ntil Congress speaks directly on the subject, [] we will not hold a school district liable in damages under Title IX for a teacher's sexual harassment of a student absent actual notice and deliberate indifference." *Gebser v. Lago Vista Indep. School District*, 524 U.S. 274, 292-93 (U.S. 1998). To this, our Court of Appeals has added:

> The Supreme Court has held that Title IX's requirement of an adequate response is violated not only if school officials render no response, as alleged by Hayut, but also if the response that is rendered amount[s] to deliberate indifference to discrimination. ... Deliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances and when remedial action only follows after a lengthy and unjustified delay.

*Hayut v. State Univ. of New York*, 352 F.3d 733, 751 (2d Cir. 2003)(citations and quotations omitted).

An issue arises in this case as to whether the District's knowledge of allegations of Gordon's prior sexual harassment of other students or of this teacher's proclivity toward sexual harassment of students can legally support a finding of the actual notice required under *Gebser* for *this Plaintiff's* Title IX claim. As the District observes, our Court of Appeals has not spoken directly on the actual notice standard in the Title IX context. Nor has it spoken on whether the actual notice requirement may be satisfied under certain factual scenarios, by knowledge of a teacher's prior harassment. It has, however, impliedly considered the actual notice standard in conjunction with its consideration of the Title IX standard for deliberate indifference, in a case involving race discrimination in school. In that case the Court stated:

> It would be inappropriate to base a finding of discriminatory intent on a defendant's failure to respond to circumstances that were not actually known to him, even if he reasonably should have known. The Supreme Court has rejected the use of such an objective ("should have known") test for deliberate indifference in the Title IX context, *see Davis, 119 S. Ct. at 1671; Gebser, 118 S. Ct. at 1996-99. ...* Of course, a showing that the defendant "should have known" can, in some circumstances, create an inference -- at least sufficient to raise a genuine issue -- that the defendant *did* know.

*Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999)(emphasis added).[1]

---

[1] The Court of Appeals noted that although *Gant* did not involve sex discrimination claims under Title IX, "its reasoning with respect to deliberate indifference is equally applicable

8

In *Gant,* the Court illustrates that the deliberate indifference analysis and actual knowledge analysis may be inextricably intertwined, particularly in cases such as *Gant* and the case at bar, in which the evidence that a defendant *should* have known might create an inference that it *did* know. The Court also made reference to *Farmer v. Brennan, 511 U.S. 825, 847 (1994)*, in which the Supreme Court held that a prison official may be liable under the Eighth Amendment based on deliberate indifference to the safety of prisoners if he knows of, and responds unreasonably to "a substantial risk of serious harm." This easy appellate reference to knowledge of a substantial risk of serious harm in the context of deliberate indifference, persuades this Court that the actual notice standard may legally be satisfied by knowledge of a "substantial risk of serious harm" in a context where, as here, multiple prior allegations of sexual abuse were lodged against a teacher of very young children, so that his proclivities for such abuse were well known.

In *Gebser*, the Supreme Court held that "a complaint from parents of other students charging only that [the teacher] had made inappropriate comments during class, [] was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student." *Gebser*, 524 U.S. at 291. The Supreme Court's analysis suggests that the *nature* of the complaint goes to the question of whether actual notice existed, at least as much as does the *source* of the complaint. The Court did not conclude that actual notice was non-existent just because the Plaintiff in that case did not *herself* previously notify the school of evidence of harassment.

---

here." *Id. at 140, n.5*.

The District argues that after the State Education Department's investigation and decision not to pursue revocation of Gordon's license, the District's hands were bound, and that the 1981 and 1989 allegations could only be seen as uncorroborated allegations, which should not now be viewed as having provided the District with actual notice. *See Reply Memo at 2.* The Court concludes that this is not necessarily so. A reasonable juror could conclude, based upon the totality of the evidence including the Department's letter, that the District's hands were not bound when it was instructed that the matter could best be "handled" at the local level, and that the Department was prepared to commence revocation of Gordon's license if the alleged behavior should be "repeated."

In the absence of clear authority to the contrary, and in consideration of the gravity of the offense, this Court concludes that actual knowledge of a teacher's propensity or proclivity to sexually harass children may constitute actual knowledge, for purposes of a subsequent victim's Title IX claim. It remains to be seen at a plenary trial whether Plaintiffs will ultimately prevail in proving that actual notice existed in this case, and whether the District's response or lack thereof amounted to deliberate indifference.

In *Davis,* the Supreme Court noted that in *Gebser,* recipients could be liable in damages only where their own deliberate indifference effectively "caused" the discrimination. *Davis*, 526 U.S. at 642-43 (1999). This language implies that a Title IX claim may stand for damages caused *as a result of* deliberate indifference, and not just when a post-complaint response is

10

inadequate.  The apparently efficient response of the District from February 26, 2004 onward, does not necessarily exclude a finding of prior deliberate indifference sufficient to sustain a claim for damages under Title IX.

The Supreme Court implied that the complaints of others subjected to, or observant of harassment may be considered when judging the response of a school board.

> While it remains to be seen whether petitioner can show that the Board's response to reports of G. F.'s misconduct was clearly unreasonable in light of the known circumstances, petitioner may be able to show that the Board "subjected" LaShonda to discrimination by failing to respond in any way over a period of five months to complaints of G. F.'s in-school misconduct from LaShonda *and other female students*.  (Emphasis added)

*Davis*, 526 U.S. at 649.  While *Davis* addressed student-on-student harassment, this analysis seems even more compelling in a situation where the harassment is by a teacher, and of a very young child.

"Deliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances and when remedial action only follows after a lengthy and unjustified delay."  *Hayut*, 352 F.3d at 751 (citation and quotations omitted).  The New York State Education Department determined "that the matter can best be handled at the local level" and recommended "that a strong counseling memo be issued to the teacher," on the basis of the complainants' reaction to Gordon's alleged activity and "their willingness to pursue the matter further, even to a hearing if necessary."  While this Court acknowledges the Supreme Court's admonition in *Davis* that the deliberate indifference question

is not a mere "reasonableness standard" that transforms every school disciplinary decision into a jury question, in a case such as this, the issue seems best suited for a jury to consider the range of all known circumstances, from the District's apparently efficient response on February 26, 2004, to its earlier decision not to remove Gordon from the classroom or more closely monitor his interaction with students.

There remain disputed issues of material fact as to whether the School District's supervisory officials (Mr. McKeever, Ms. Cassano, Mr. Wilson, Defendant Reiner and Defendant Jackson) had actual notice of, and were deliberately indifferent to the alleged misconduct of Defendant Gordon. As earlier noted, a showing that a defendant "should have known" can, in some circumstances, create an inference at least sufficient to raise a genuine issue as to whether the Defendant *did* know. *See Gant v. Wallingford, supra.* Upon a full trial record, a jury will decide whether these facts constitute actual notice and deliberate indifference sufficient to recover on Plaintiff's Title IX claim.

*Section 1983 Claim*

Defendants argue that Plaintiff's apparent claim under 42 U.S.C. §1983 must be dismissed because the claims are subsumed by Title IX. Plaintiffs allege that Defendants Jackson and Reiner violated the infant Plaintiff's constitutional rights by permitting Defendant Gordon to sexually abuse the infant Plaintiff. While Defendants argue that they were not personally involved, Plaintiffs argue that Defendants Jackson and Reiner may be found liable under §1983, because they were "involved" by virtue of being in supervisory policymaking

positions, were grossly negligent in managing Defendant Gordon for failing to review his personnel file when they began as School District Superintendent and Principal, respectively, and accordingly, by failing to implement a plan to manage and monitor Defendant Gordon. Plaintiffs argue that these Defendants "allowed the Defendant School District 'policy or custom under which unconstitutional practices occurred ... to continue' when they received the complaint about Defendant Gordon's behavior towards J.A. and did nothing about it." *Opp. Memo.* at 18.

> Our Court of Appeals has held:
>
> Although [a student] has a constitutional right to an educational environment free of sexual harassment, we have already determined that Title IX provides the exclusive remedial avenue. Congress intended Title IX to be the appropriate vehicle to protect all of plaintiff's rights arising in this situation as Title IX's enforcement scheme fully addresses her constitutional claims against the School District and School Board. Consequently, we hold that [a] plaintiff may not maintain [a] § 1983 claim and thereby bypass the comprehensive remedial scheme created in Title IX.

*Bruneau v. South Kortright Cent. Sch. Dist.*, 163 F.3d 749, 759 (2d Cir. 1998).

Accordingly, Plaintiff's constitutional claims under 42 U.S.C. §1983 are dismissed.

*Qualified Immunity*

Defendants Jackson and Reiner argue that they are entitled to qualified immunity because they did not have any notice whatsoever of Gordon's actions prior to February 26, 2004, and that their actions concerning the 2002-2003 complaint were objectively reasonable. Plaintiffs argue that Jackson and Reiner were effectively put on notice of Defendant Gordon's conduct when

13

they accepted their positions, when they received the 2002-2003 complaint, and "every time they viewed the tortured configuration of his classroom." *Oppo. Memo at 19*. Plaintiffs also argue that these Defendants should have reviewed Gordon's personnel file when they began their respective jobs and at least in the 2002-2003 school year, after Gordon's possibly inappropriate conduct with student J.A. was brought to their attention.

A public official is entitled to qualified immunity for acts taken in his or her official capacity, unless those acts violated clearly established Constitutional rights of which an objectively reasonable official would have been aware. *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2nd Cir. 2003). The analysis is three-part. First, the Court must decide whether the plaintiff has alleged a violation of a Constitutional right. Second, the right alleged must have been clearly established at the time of the violation. Finally, the official will receive immunity if his or her actions were objectively reasonable. *See id. at 212*. Accepting plaintiffs' version of the facts as true, if a reasonable official would have believed that he or she was not violating plaintiffs' Constitutional rights, the Court should find qualified immunity. *See Bizzarro v. Miranda et. al.*, 394 F.3d 82, 86 (2nd Cir. 2005). "If plaintiffs' version of the facts reveals that the officials could reasonably have believed they were not violating plaintiffs' constitutional rights, [a] district court should [grant a] motion for summary judgment." *Id.* at 86.

In this case, accepting Plaintiff's version of the facts as true, the question of qualified immunity is at the very least a fact-intensive one which can be best determined upon a plenary trial record.

14

*Plaintiff's Pendent State Law Claims: Negligence, Negligent Hiring/Retention/Supervision, Emotional Distress, Gross Negligence*

Defendants' motion to dismiss the state claims alleged in the Complaint is denied at this time. The Court at this time is inclined to exercise its discretion to exercise supplemental jurisdiction over state claims arising from the same nucleus of operative fact as the federal claim(s). To the extent such claims are duplicative of the federal claims, the Court may conclude at the end of the trial, not to submit them to the jury.

*Plaintiff Mother's Derivative Cause of Action*

Defendants argue that the infant Plaintiff's Mother is not entitled to derivative damages based on Title IX or §1983 civil rights violations. The Court agrees. *See e.g., Bright v. City of New York,* 1985 U.S. Dist. LEXIS 21042, 6-7 (S.D.N.Y. 1985) (Haight. J.)("It appears that an individual's claim for emotional distress arising from alleged violations of a loved one's civil rights, standing alone, is not cognizable under section 1983"). To the extent that Title IX is the basis for the derivative claim, it cannot be sustained. The Court reserves for decision at trial whether any tort-based derivative claim may stand in favor of Plaintiff's Mother.

*Claim for Punitive Damages*

The individual District Defendants argue that the Court should dismiss Plaintiffs' claim for punitive damages because there is no evidence in the record that the Defendants took any actions that were motivated by ill will or with reckless or callous indifference to any of Plaintiff's federally protected rights. While this point appears to be valid, the Court declines to

reach the issue on less than a plenary trial record.

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and dismissed in part. Counsel shall attend for jury selection followed immediately by trial on February 27, 2006, at 9:15 a.m.

X

    X

        X

            X

                X

                    X

                        X

SO ORDERED.

Dated: White Plains, New York
      February 9, 2006

SO ORDERED.

Dated: White Plains, New York
February 9, 2006

_____
Charles L. Brieant, U.S.D.J.

SO ORDERED.

Dated: White Plains, New York
      February 9, 2006

                                                                                         _____
                                                                                         Charles L. Brieant, U.S.D.J.